IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROCK GALLIARD and TAMMY
GALLIARD,

       Case No.: 12-cv-11459

      Plaintiffs,

       Honorable Patrick J. Duggan

v.

USAA FEDERAL SAVINGS BANK AND
USAA CASUALTY INSURANCE
COMPANY, SUBSIDIARIES OF USAA,
PHH MORTGAGE SERVICES
CORPORATION, and AMERICAN
SECURITY INSURANCE COMPANY,
AND FANNIE MAE A/K/A FEDERAL
NATIONAL MORTGAGE
ASSOCIATION,

      Defendants.

_____

**<u>OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
IN PART AND DENYING DEFENDANTS' MOTIONS TO DISMISS IN PART</u>**

This action, brought against five defendants, involves eight counts relating to a

residential mortgage foreclosure and centers on the placement of a homeowner's

insurance policy on the property subject to the mortgage.  Plaintiffs ask this Court to void

a foreclosure conducted by advertisement after the statutory redemption period has

expired.  Presently before the Court are two motions to dismiss – one filed by Defendant

PHH and Federal National Mortgage Association ("Fannie Mae") and the other by USAA

Federal Savings Bank and USAA Casualty Insurance Company (collectively, the "USAA

Defendants") – Plaintiff's Second Amended Complaint filed pursuant to Federal Rule of

Civil Procedure 12(b)(6). [1]   All Defendants argue that Plaintiffs lack standing to assert their claims and have failed to sufficiently plead their case.  The Court has reviewed the filings and heard the positions of the parties at oral argument.  For the reasons stated herein, the Court grants Defendants' Motions to Dismiss in part and denies them in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Brock and Tammy Galliard allege claims arising out of the foreclosure of property located at 1187 Longfellow Street, Detroit, MI 48202 ("the property"), where they still reside. [2]  (Second Amended Compl., ECF No. 28, ¶ 9, (hereinafter "Compl."); USAA Def.'s Mot., ECF No. 29, at 1.)  For the purpose of this motion, the basic facts are not in substantial dispute.

On December 7, 1999, Plaintiffs entered into a loan with USAA Federal Savings Bank ("FSB") and serviced by PHH Mortgage Corporation ("PHH") to purchase the property; as security for the $96,000 indebtedness, they executed a mortgage.  (Compl. ¶¶ 10-11.)   The mortgage required Plaintiffs to maintain insurance on the property. (Mortgage, Compl., Ex. 1, at ¶ 5.)  If Plaintiffs failed to do so, PHH and FSB retained the right to "obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7."  (*Id.*)  Paragraph seven (7), labeled "Protection of Lender's Rights in the Property", allowed the entities to "do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property."  (*Id.* ¶ 7.)   Any funds expended in obtaining insurance would become "additional debt of the [Plaintiffs]."  (*Id.*)

---

[1] Defendant ASIC did not file a motion to dismiss but filed an answer. (ECF No. 30.)
[2] The Wayne County Circuit Court issued a temporary restraining order and subsequently issued a preliminary injunction staying eviction proceedings.  (ECF No. 1-2, at 5, 201.)

Plaintiffs failed to submit adequate evidence of an insurance policy as early as October 2000, as FSB, working with PHH, obtained a policy in the amount of $96,000 from American Security Insurance Company ("ASIC") for the property.  (Compl., Ex. 4.) This policy, effective through October 2001, had an annual premium of $1,003.00.  (*Id.*) By June 2002, Plaintiffs purchased their own insurance through USAA Casualty Insurance Company ("USAA CIC").  (*Id.*, Ex. 5.)  The following chart summarizes the coverage Plaintiffs obtained from USAA CIC from June 2002 through June 2007. [3]

| Period of Coverage | Dwelling Insurance Coverage[4] | Annual Premium Due |
|---|---|---|
| June 2002-June 2003 | $653,000 | $1,698.36 [5] |
| June 2003-June 2004 | $677,000 | $3,075.31 [6] |
| June 2004-June 2005 | $730,000 | $3,093.83 [7] |
| June 2005-June 2006 | No evidence in record | No evidence in record |
| June 2006-June 2007 | $746,000 | $3,535.51 [8] |

USAA CIC terminated Plaintiffs' insurance policy in 2007.  (*Id.* ¶ 18, Oct. 13, 2011 Letter, Ex. 6, at 2.)  Plaintiffs assert that USAA CIC did not provide an explanation for the cancellation but that they ultimately discovered the cancellation was the result of two events: (1) a robbery occurring at the property in 2005, and (2) USAA CIC's realization that Plaintiffs were over-insured.  (*Id.*, Ex. 6, at 2.)  USAA CIC gave Plaintiffs two months to obtain a new policy, which Plaintiffs were unable to do.  (*Id.*)

---

[3] The record is devoid of insurance information for the periods of October 2001 to May 2002, and June 2005 to June 2006, other than by reference in correspondence between Plaintiff and PHH.  (Compl., Ex. 6.)

[4] Plaintiffs' policies through USAA CIC insured the dwelling and included insurance for Plaintiffs' personal property and loss of use.  For purposes of the instant matter, however, the amount of insurance coverage on the dwelling is the only pertinent figure.

[5] (Compl., Ex. 5.)

[6] (Compl., Ex. 4.)

[7] (Compl., Ex. 4.)

[8] (Compl., ¶ 15, Annual Escrow Account Disclosure Statement, Ex. 6.)

As a result, in April 2008, insurance was force-placed on the property through ASIC with an annual premium of $3,173.85. (PHH Br., at 4 (citing Compl., Ex. 6, which is an Escrow Account Summary for 2008 and which confusingly provides a figure of $2,961.49).) The force-placed policy was renewed for the 2009-2010 term. While the 2009-2010 policy insured the dwelling for $773,000, an amount similar to the value Plaintiffs' prior policies covered, the annual premium increased to $8,096. (Compl., Ex. 8.) This policy was retained for the 2010-2011 term. (PHH Mot., at 4.) The high premium for the policies in place from 2009 through 2011 increased Plaintiffs' monthly mortgage payment from $1,325.84 to $1,707.36. (Compl. ¶ 22.) Ultimately, Plaintiffs fell behind on their mortgage payments, resulting in default.

In April 2011, Plaintiffs received a foreclosure notice apprising them of a sheriff's sale scheduled for May 25, 2011, and stating that Plaintiffs owed $131,030.97 on the mortgage, a figure which included the force-placed insurance premiums. (*Id.* ¶¶ 23-25, Ex. 10.) The sheriff's sale was adjourned while Plaintiffs pursued a loan modification. (*Id.* ¶ 27.) Plaintiffs' application for a loan modification was denied because their monthly escrow payments, which included charges for the force-placed insurance policy, were too high for them to qualify. (*Id.*)

The foreclosure process resumed and on September 7, 2011, PHH purchased Plaintiffs' home at a sheriff's sale for $135,531.65. (*Id.* ¶ 28.) PHH quitclaimed the property to Fannie Mae on September 13, 2011. (USAA Def.'s Mot., Ex. B.)

In October 2011, Plaintiffs initiated correspondence with a PHH employee and questioned the force-placed insurance premiums; Plaintiffs submitted a marketing

analysis they performed showing that comparable homes in their neighborhood had sold for $19,000 to $48,000 and pointed out that the principal balance on the loan was roughly $85,000.  (Compl. ¶ 26.)  By November 2011, PHH recognized the property was over-insured and had the insurance company retroactively reduce the policy to cover the $85,488 still owed under the mortgage.  (*Id.* ¶ 29, Ex. 13.)  The reduced coverage naturally resulted in a reduced premiums; the annual premium fell from $8,096 a year to $895 a year.  The overcharges were refunded to Plaintiffs' escrow account so as to offset their debt.  (Nov. 8, 2011 Email, Compl., Ex. 13.)

Although the high insurance premiums contributed to Plaintiffs defaulting on the mortgage, PHH, the entity that selected the forced-placed insurance policy, refused to rescind the sheriff's sale, reinstate the mortgage, or modify Plaintiffs' loan.  (Compl. ¶ 30.)  Moreover, Defendant USAA CIC denied Plaintiffs' request to have their insurance assessments for the years 2002-2008 recalculated to reflect the actual value of the property.  (*Id.* ¶ 31.)

Plaintiffs' right of redemption expired on March 7, 2012.  Plaintiffs did not redeem within the six months permitted by statute, but did initiate this suit challenging the foreclosure in Wayne County Circuit Court on February 22, 2012.  The state court granted Plaintiffs' request for a temporary restraining order and subsequently issued a preliminary injunction staying eviction proceedings.  (Removal Petition, State Court Record, at 5, 201.)

After Defendants removed the action, Plaintiffs filed a Second Amended Complaint alleging eight causes of action: (1) "violation of the Real Estate Settlement

5

2:12-cv-11459-PJD-RSW   Doc # 36   Filed 11/15/12   Pg 6 of 26   Pg ID 1515

Procedures Act (RESPA) as to PHH"; (2) "illegal foreclosure in violation of Michigan law against PHH"; (3) "breach of contract against PHH"; (4) "tortious interference with Plaintiffs' mortgage contract by Defendant American Security Insurance"; (5) "fraud/misrepresentation against all Defendants except Fannie Mae"; (6) "concert of action as to all Defendants"; (7) "action to quiet title against Fannie Mae"; and (8) "violation of the Michigan Mortgage Brokers, Lenders and Servicers [Licensing] Act . . . against Defendant PHH."  All Defendants assert that Plaintiffs lack standing to challenge the foreclosure by advertisement and further claim that Plaintiffs have failed to state a claim upon which relief can be granted with respect to the other counts.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), the Court must construe the complaint in favor of the plaintiff and determine whether plaintiff's factual allegations present claims plausible on their face.  This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims.  *Id.* 550 U.S. at 557, 127 S. Ct. at 1965.  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing

6

*Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted). In conducting its analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

7

# III.   DISCUSSION

The majority of Plaintiffs' claims relate to the validity of the foreclosure sale.  The Court groups these claims – those relating to fraud, the legality of the foreclosure, and the quiet title action – together, addressing them as claims challenging the foreclosure by advertisement.  The Court then analyzes the remaining three counts.

## A.   Challenges to Foreclosure by Advertisement

Plaintiffs primarily seek relief from this Court in the form of a declaration that the foreclosure sale is void *ab initio* and ask the Court to reinstate their interest in the property.  All defendants, however, argue that the expiration of the statutory redemption period deprives Plaintiffs of standing to challenge the sale.  (USAA Def.'s Br., at 4; PHH Def.'s Br., at 5-7; Def. ASIC's Ans., at 13, ¶ 15.)  The Court thus begins by analyzing the standing issue and the bases on which Plaintiffs may challenge the foreclosure.

In Michigan, statutory law governs foreclosure sales by advertisement.  *Rainey v. U.S. Bank Nat'l Ass'n*, No. 11-12520, 2011 U.S. Dist. LEXIS 123347, at *12 (E.D. Mich. Oct. 25, 2011) (unpublished) (Lawson, J.) (citing *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (1993)).  Thus, "[o]nce the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption." *Id.* (citing *Senters*, 443 Mich. at 50, 503 N.W.2d at 641 (citing Mich. Comp. Laws § 600.3201, *et seq.*)).  Mortgagors may redeem the foreclosed property within six months of a sheriff's sale.  Mich. Comp. Laws § 600.3240(8).  If no redemption is made, the

sheriff's deed "become[s] operative, and [] vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor had[.]"  *Id.* § 600.3236.

In *Piotrowski v. State Land Office Board*, the Michigan Supreme Court held that mortgagors lose "all their right, title, and interest in and to the property at the expiration of their right of redemption."  302 Mich. 179, 186, 4 N.W.2d 514, 516 (1942).  This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently "to bar former owners from making any claims with respect to the foreclosed property after the end of the redemption period."  *Hall v. Green Tree Servicing, L.L.C.*, No. 12-11811, 2012 U.S. Dist. LEXIS 85955, at *8-9 (E.D. Mich. June 21, 2012) (unpublished) (Edmunds, J.) (collecting cases).  This is true even if a suit is filed within the redemption period, as here, because the mere filing of an action does not give rise to tolling.  *Overton v. Mortgage Elec. Registration Sys.*, No. 284950, 2009 Mich. App. LEXIS 1209 (Mich. Ct. App. May 28, 2009) (unpublished) (per curiam).  It is this rule that defendants cite in support of their position that Plaintiffs lack standing to challenge the foreclosure sale.

There is, however, one important caveat to the general rule described above.  Once a foreclosure sale has taken place and the redemption period has run, "a strong showing of fraud or irregularity can undo the sale."  *See, e.g.*, *Brezzell v. Bank of America, N.A.*, No. 11-11476, 2011 U.S. Dist. LEXIS 74291, at *11 (E.D. Mich. July 11, 2011) (unpublished) (Edmunds, J.) (citing *Overton*, No. 284950, 2009 Mich. App. LEXIS 1209, at *1).  This exception has alternatively been stated as permitting courts to set aside a sheriff's sale upon a finding of "fraud, accident, or mistake."  *Senters*, 443 Mich. at 55,

9

57, 503 N.W.2d at 643, 645.  The Court assumes that "irregularity" is shorthand for an accident or mistake.  Notably, the purported fraud or irregularity must relate to the sale process.  *Pettey v. CitiMortgage, Inc.*, No. 11-13779, 2012 U.S. Dist. LEXIS 117932, at *16 (E.D. Mich. Aug. 21, 2012) (unpublished) (Lawson, J.) (citing *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (1935) (holding that only the sale procedure may be challenged after a sale) and *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in sale proceedings (quotation omitted)).  The fraud or irregularity standard is a stringent one and "the possibility of injustice is not enough to tamper with the strict statutory requirements." *Freeman*, 241 Mich. App. at 637, 617 N.W.2d at 49 (citation omitted).

Because the redemption period has expired in this case, Plaintiffs must make a plausible showing of fraud or irregularity to state a claim for the relief they seek. Plaintiffs have standing to make this claim.  *See, e.g.*, *Rainey*, No. 11-12520, 2011 U.S. Dist. LEXIS 123347, at * 7 (standing exists even after redemption period because claimants are "the last lawful owner and possessor of the property[,]" they "often remain in continuing possession of the property[,]" and they "claim a continuing right to lawful ownership and possession based on defects in the process used . . . to divest them of those rights." (quotation omitted)). The issues of fraud and irregularity are addressed in turn.

## 1.    *Plaintiffs' Fraud Allegations Fail to State a Plausible Claim for Relief*

Several alleged causes of action are premised on fraud.  In analyzing each fraud-related count, the Court determines that Plaintiffs have failed to state a plausible claim for relief.  As such, the fraud allegations do not support setting aside the foreclosure sale.

a.      *Count V Fails to State a Claim for Fraud or Misrepresentation*

Count V of Plaintiffs' Complaint asserts a "fraud/misrepresentation" claim against all Defendants but Fannie Mae.  While neither defense motion appears to acknowledge that Plaintiffs seek to state a claim for innocent misrepresentation rather than traditional fraud, both motions argue that Plaintiffs failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  The Court agrees.

Rule 9(b) provides that "[i]n alleging fraud[9] or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy this standard, a claimant must "(1) specify the statements the plaintiff contents were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent."  *Louisiana School Employees' Ret. Sys. v. Ernst & Young, L.L.P.*, 662 F.3d 471, 478 (6th Cir. 2010).

Liberally construing the Complaint, it is evident that Plaintiffs fail to state an actionable fraud claim.  Plaintiffs claim that "the actual cost of force-placed insurance on their home" constitutes the "misrepresentation."  (Compl. ¶ 80.)  As pled, this fact does not show a material representation that was false.  While the force-placed policy insured more than the amount Plaintiffs owed on the principal, Plaintiffs make no allegation that

---

[9] An innocent misrepresentation claim "sounds in fraud."  *Smith v. Bank of Am. Corp.*, No. 11-CV-1406, 2012 U.S. App. LEXIS 12504, at *6-7 (6th Cir. June 18, 2012) (unpublished) (citation omitted).  When a "claim is said to . . . 'sound in fraud,' [] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  *Hennigan v. Gen. Elec. Co.*, 09-11912, 2010 U.S. Dist. LEXIS 103090, at *14 (E.D. Mich. Sept, 29, 2010) (unpublished) (Roberts, J.) (quotation omitted).  Thus, to survive a motion to dismiss, Plaintiffs' fraud allegations must adhere to the pleading requirements contained in Rule 9(b).

anybody misrepresented the cost of the policy itself. In other words, the property may have been over-insured but, for example, there is no allegation that any defendant told Plaintiffs that they had to pay $8,096 a year for a policy that actually cost $3,000.

Plaintiffs allege that such "misrepresentations were made in phone calls . . . and written communications between Defendants and Plaintiffs during those years [when the force-placed policy was in effect]." (Compl. ¶ 77.) These allegations fail to identify which defendant Plaintiffs are referring to, who made the statements, or where and when the statements were made. These vague assertions of fraud do not comply with Rule 9(b). Therefore, the allegations cannot withstand a Rule 12(b)(6) motion to dismiss.

b.    *Count VI Fails to State a Claim for Civil Conspiracy*

Count VI alleges that all named defendants engaged in a concert of action to "fraudulently take Plaintiffs' property." (Compl. ¶ 90.) To the extent that Plaintiffs attempt to plead a civil conspiracy, the attempt fails. First, this allegation amounts to nothing more than a legal conclusion. Such conclusions are not entitled to a presumption of truth on a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Second, "[a] civil conspiracy, by itself, is not a cognizable claim but is defined by the tort that constitutes the underlying theory of liability." *Partlow v. Aurora Loan Servs. L.L.C.*, No. 11-12940, 2012 U.S. Dist. LEXIS 410, at *15 (E.D. Mich. Jan. 4, 2012) (unpublished) (Cook, J.) (citation omitted); *Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869, 875 (E.D. Mich. 2010) (dismissing civil conspiracy claim where plaintiff failed to state claim for underlying tort of fraud). The failure of Plaintiffs' underlying fraud allegations mandates that the Court dismiss the concert of action claim contained in Count VI.

c.     *Count VIII Fails to State a Claim under the MMBLSLA*

Count VIII, alleging a violation of the Michigan Mortgage Brokers, Lenders, and

Servicers Licensing Act ("MMBLSLA"), Michigan Compiled Laws § 445.1651, *et seq.*,

also relies on some underlying fraud.  (Compl. ¶ 106 ("Defendant violated this Act in

ways including but not limited to: . . . (b) Engaging in fraud, deceit, and/or material

misrepresentation in connection with this transaction[.]").)  Because Plaintiffs fail to state

a claim for fraud by virtue of their failure to comply with Rule 9(b), the MMBLSLA

claim fails to state a claim as well.  *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832

(E.D. Mich. 2010) (dismissing mortgagor's MMBLSLA fraud claim because mortgagor

did not plead fraud with requisite specificity); *Hanning v. Homecomings Fin. Networks*,

436 F. Supp. 2d 865, 872 (W.D. Mich. 2006) (dismissing MMBLSLA count after finding

it depended upon a previously rejected fraud claim).

In sum, Plaintiffs' have failed to state a plausible claim for relief for fraud under

any theory.  As such, the Court may not set aside the foreclosure sale on this basis.

**2.     *Plaintiffs State a Plausible Claim for Relief on the Basis of an Irregularity***

In Count II, Plaintiffs allege that PHH illegally foreclosed the property.  (Compl.

¶¶ 42-47.)  Defendants disagree.  Michigan law permits a party to foreclose a mortgage

by advertisement if the following circumstances exist:

> (a) A default in a condition of the mortgage has occurred, by
> which the power to sell became operative.
> (b) An action or proceeding has not been instituted, at law, to
> recover the debt secured by the mortgage or any part of the
> mortgage; or, if an action or proceeding has been instituted,
> the action or proceeding has been discontinued; or an
> execution on a judgment rendered in an action or proceeding

13

> has been returned unsatisfied, in whole or in part.
> (c) The mortgage containing the power of sale has been
> properly recorded.
> (d) The party foreclosing the mortgage is either the owner of
> the indebtedness or of an interest in the indebtedness secured
> by the mortgage or the servicing agent of the mortgage.

Mich. Comp. Laws § 600.3204(1).  A failure to satisfy any one of these statutory

requirements renders a foreclosure by advertisement void *ab initio* because such a failure

constitutes "a structural defect that goes to the very heart of defendant's ability to

foreclose by advertisement in the first instance."  *Davenport v. HSBC Bank USA*, 275

Mich. App. 344, 347, 739 N.W.2d 383, 384 (2007).   Although Plaintiffs ask the Court to

declare the foreclosure void *ab initio*, Plaintiffs do not contend that Defendants violated

one of these provisions.  Instead, Plaintiffs allege that the foreclosure notice was

defective pursuant to Michigan law, which requires foreclosure notices to include "[t]he

amount claimed to be due on the mortgage on the date of the notice."  Mich. Comp. Laws

§ 600.3212(c).

In contrast to structural defects, the validity of a foreclosure sale, even if it

allegedly violates one of § 600.3212's notice requirements, cannot be challenged if the

"mortgagor failed to challenge the foreclosure by advertisement during the redemption

period or any proceedings seeking an order of eviction, or if the foreclosed property has

been sold to a bona fide purchaser."  *Rainey*, No. 11-12520, 2011 U.S. Dist. LEXIS

123347, at *14-15 (citation omitted).  Thus, unlike a structural defect, a defect in notice

does not necessarily render the sale void; rather, "a defect in notice renders a foreclosure

sale voidable" which allows courts to examine "whether any harm was caused by the

defect" such that the mortgagor lost the "potential opportunity to preserve some or any portion of his interest in the property[.]" *Jackson Inv. Corp. v. Pittsfield Prod., Inc.*, 162 Mich. App. 750, 755, 756, 413 N.W.2d 99, 101 (1987).

The Court interprets the above to mean that (1) a defect in notice (2) that harms Plaintiffs (3) may constitute an irregularity permitting the Court to set aside the foreclosure sale. Plaintiffs allege that the notice in the instant case was defective because it included the force-placed insurance premiums – premiums that were later reduced at PHH's direction – in violation of Michigan Compiled Laws § 600.3212(c). Plaintiffs further allege that this defect harmed them. The Court first examines whether a claimed defect exists so as to render the foreclosure sale voidable and then proceeds to assess whether the defect harmed Plaintiffs. In the process, the Court explores whether these allegations plausibly establish an irregularity to void the foreclosure sale.

a.    *Excessive Amount Claimed Due*

The Michigan Supreme Court has stated that "[a] mortgage sale is not necessarily invalid because more is claimed than is in fact due, provided the claim is in good faith."[10] *Flax v. Mut. Bldg & Loan Ass'n of Bay Co.*, 198 Mich. 676, 691, 165 N.W. 835, 839 (1917) (citations omitted). Furthermore, "an excessive claim for the amount due warrants setting aside a foreclosure only if it is significantly excessive[.]" *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 503, 739 N.W.2d 656, 663 (2007) (citations omitted). By

---

[10] Through counsel, Defendants PHH and Fannie Mae argue that any overstatement of the amount claimed due is irrelevant because the statute only requires the notice to contain "the amount *claimed to be due* on the mortgage[.]" (PHH Br., at 10.) At oral argument, counsel appeared to acknowledge the absurd implications of this argument.

implication, this means that if the amount claimed due is significantly excessive and if other factors support a finding of irregularity, a court may set aside a foreclosure sale.

Plaintiffs contend the foreclosure sale should be set aside because the inclusion of the insurance premium was excessive and thus not really "due" within the meaning of the statute. As evidence that the amount was excessive, Plaintiffs point to PHH's decision to retroactively change the insurance policy and to refund roughly $24,000 to their escrow account. (Nov. 8, 2011 Email, Compl., Ex. 13; PHH Br., at 4.) At the time of foreclosure, Plaintiffs owed roughly $85,000 in principal on the mortgage. Thus, the $24,000 in insurance charges amounted to nearly thirty-five percent of the amount due on the principal. The Court finds that the amount claimed due in the instant case was significantly excessive. *Compare Millard v. Truax*, 50 Mich. 343, 345, 15 N.W. 50, 53 (1883) (deeming fee of twenty-five percent of the amount of the mortgage excessive) *with Sweet Air Inv.*, 275 Mich. App. at 504, 739 N.W.2d at 663 (finding that a six percent overstatement in the amount claimed due was not excessive).

While the Court finds that the amount claimed due was overstated, the charging of excessive fees by itself does not necessarily create a presumption of bad faith. *Sweet Air Inv.*, 275 Mich. App. at 503, 739 N.W.2d at 663 (rejecting mortgagor's argument that overstatement of amount due gives rise to an inference of bad faith). As discussed in relation to Plaintiffs' fraud allegations, the record contains no evidence that PHH deliberately over-insured the property. In fact, PHH selected a policy insuring the dwelling for an amount similar to those purchased by Plaintiffs. The insurance premium appears to have been "included in the sum due in this case by mere inadvertence or

16

miscalculation" rather than with mal-intent. *Millard*, 50 Mich. at 345, 15 N.W. at 503 (1883). Even without a finding of bad faith, however, language from *Senters* suggests that an accident or mistake in connection with the sale, which would seem to include the statutorily-required notice containing the amount claimed due, may justify a court's reversal of a sheriff's sale. 443 Mich. at 55, 57, 503 N.W.2d at 643, 645. Furthermore, Plaintiffs argue that the inflated force-placed insurance premiums contributed to their default by making the monthly payments unaffordable. (Compl. ¶ 45.) This default provided the grounds to initiate the foreclosure. Mich. Comp. Laws § 600.3204(1)(a) (providing that foreclosure is appropriate upon default in a condition of the mortgage). If the excessive premiums caused this default, then the placement of the force-placed policy appears to go to the very heart of PHH's authority to foreclose in the first place.

To the extent that an "accident or mistake" constitutes an "irregularity," the Court finds that the facts as pled in the Complaint have alleged an irregularity in connection with the foreclosure. The Court bases this finding on the peculiar chain of alleged events, events which the Court must accept as true for the purpose of a motion to dismiss. First, PHH selected the force-placed insurance policy. Second, the excessive premium contributed to the default. Third, Plaintiffs were denied a loan modification because their monthly escrow payments, which included the insurance premiums, were too high for them to qualify. Fourth, the excessive amount claimed due in the foreclosure notice was a result of the insurance policy. Fifth, after the sheriff's sale, PHH reduced the insurance coverage to the amount Plaintiffs owed on the principal and refunded Plaintiffs the amount they overpaid. Sixth, PHH purchased the property for approximately $135,000

17

when the balance on the principal was around $85,000.  Seventh, and lastly, PHH refused to take any corrective action beyond providing Plaintiffs with a refund of the funds they overpaid for the insurance.  These allegations give the Court pause in dismissing Plaintiffs' illegal foreclosure claim at this early stage of litigation.  *Cf. Pine Oaks, L.L.C. v. Devries*, No. 249153, 2004 Mich. App. LEXIS 3335, at *13 (Mich. Ct. App. Dec. 9, 2004) (unpublished) (per curiam) (finding "significant procedural irregularities with respect to the default, foreclosure and redemption" where home was sold for $100,000 less than its alleged value and where there were questions as to whether the foreclosure was undertaken against the proper party).

b.    *Harm Analysis*

As alluded to above, the Court finds that the defective notice harmed Plaintiffs and that permitting Plaintiffs to go forward on the irregularity issue will not significantly harm the interests of any third parties.  *Duff v. Fed. Nat'l Mortgage Ass'n*, No. 11-cv-12474, 2012 U.S. Dist. LEXIS 27283, at * 9 (E.D. Mich. Feb. 29, 2012) (unpublished) (Rosen, C.J.) (noting that a finding of a defective notice allows courts to consider the harm suffered by the mortgagor in addition to the interests of third parties (citation omitted)).  The harms alleged here are that the excessive premiums caused Plaintiffs to default and also deprived them of an opportunity to modify their loan and thus retain an interest in the property.  (Compl. ¶¶ 45-47.)   While loan modifications are not obligatory, *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 747-48 (E.D. Mich. 2010), documents attached to the Complaint support Plaintiffs' position that the insurance premiums deprived them of an opportunity to remain on the property.  A letter from

18

USAA FSB inviting Plaintiffs to apply for HAMP, a loan modification program, states "[i]f you qualify and comply with the terms of the [HAMP] Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure." (August 5, 2011 Letter, Compl., Ex. 12.) After applying, Plaintiffs received a letter denying the loan modification because their "current monthly real estate tax and homeowners insurance premiums" were too high. (August 18, 2011 Letter, Compl., Ex. 12.) The Court finds that Plaintiffs have alleged sufficient harm and irregularities in Count II to survive a Rule 12(b)(6) motion to dismiss.

The Court also finds that the harm to Defendants is not so significant so as to outweigh the harm to Plaintiffs. Defendants had notice of the insurance issue as early as October 2011 and a PHH employee notified Plaintiffs in November that a refund for the overcharges was forthcoming. (Nov. 8, 2011 Email, Compl., Ex. 13.) Although Plaintiffs did not file suit in the state court challenging the foreclosure until February 2012, they filed within the redemption period. *Cf. Sweet Air Inv.*, 275 Mich. App. at 503, 739 N.W.2d at 662 (finding that mortgagors suffered no harm because there was no effort to timely challenge the validity of the foreclosure sale or to redeem the property, rather, mortgagors waited until eviction proceedings were instituted before they took action to challenge the foreclosure sale); *see also Duff*, No. 11-cv-12474, 2012 U.S. Dist. LEXIS 27283, at * 7-8 (explaining that mortgagor suffered no harm or prejudice because the redemption period expired two months before mortgagor filed lawsuit). Moreover, Plaintiffs persuaded the state court to enter a temporary restraining order and then a

preliminary injunction staying eviction proceedings until the allegations could be resolved in a court of law.  (Notice of Removal, State Court Pleadings, Ex. A, at 5, 201.)

While the filing of a suit does not in and of itself toll the statutory redemption period, *Overton*, No. 284950, 2009 Mich. App. LEXIS 1209, Michigan law permits an equitable extension of the period to redeem is permitted if there is "a clear showing . . . of irregularity[,]" *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (1969).  Such an irregularity, as discussed above, has been alleged here.

### 3.    *Quiet Title Claim*

Plaintiffs seek to set aside the sheriff sale and ask the Court to declare that they have title to the property.  Quiet title actions in Michigan are statutory in nature.  The law provides that "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action . . . against any other person who claims . . . [an inconsistent interest.]"  Mich. Comp. Laws § 600.2932(1).  The plaintiff has the burden of proof and must make out a prima facie case of title.  *Stinebaugh v. Bristol*, 132 Mich. App. 311, 316, 347 N.W.2d 219, 221 (1984) (citation omitted).  Once a prima facie showing is made, the burden shifts to the defendant to prove superior title. *Id.*  Courts have found that plaintiffs may provide a copy of the mortgage to make a prima facie showing of title.  *Brezzell*, No. 11-11476, 2011 U.S. Dist. LEXIS 74291, at *9.  Plaintiffs have submitted the mortgage and have discharged their prima facie burden.

Because the Court finds that Plaintiffs' have alleged an irregularity in connection with the foreclosure, the Court rejects any suggestion that they do not have a valid quiet title claim.  *Cf. Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 U.S. Dist. LEXIS

137769, at * 19-20 (E.D. Mich. Sept. 25, 2012) (unpublished) (Borman, J.) (suggesting

that a showing of fraud or irregularity would suffice to state a quiet title claim).

**B.      Breach of Contract and Tortious Interference**

To state a cause of action for a breach of contract in Michigan, Plaintiffs must (1)

demonstrate the existence of a valid contract, (2) establish the contract's terms, (3)

present evidence of a breach of those terms, and (4) show an injury causally related to

that breach.  *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999).  At

issue here is the third element.

The mortgage provides that PHH could insure the property in the event that

Plaintiffs failed to maintain insurance in a manner "necessary to protect the value of the

Property and Lender's rights in the property."  (Mortgage, Compl., Ex. 1 at ¶¶ 5, 7.)  In

Count III, Plaintiffs allege that PHH breached the mortgage contract by placing a

$773,000 insurance policy on the property instead of a policy that insured the outstanding

principal owed on the property.  (Compl. ¶¶ 52-54, 61.)  This claim is based on a

misapprehension of the contractual language.  While Plaintiffs assert that the force-placed

insurance policy should not have exceeded the $85,000 remaining on the principal, (*id.* ¶

54) Plaintiffs do not adequately explain why it was unreasonable for PHH to select an

insurance policy similar to one that the Plaintiffs had chosen "to protect the value of the

Property."  Although Plaintiffs suggest that PHH breached the implied duty of good faith

and fair dealing by insuring the property for $773,000 because PHH had discretion to

select the policy, Plaintiffs fail to appreciate that a lack of good faith cannot override an

express contractual provision.  *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d

1038, 1041 (6th Cir. 1990).  Under the terms of the mortgage, PHH could only exercise

discretion in selecting a policy if Plaintiffs breached the mortgage by not maintaining

insurance.  Where, as here, a party's discretion is limited, good faith need only have

existed when the original agreement was made.  *Id*. at 1042.   The Complaint does not

allege that PHH entered into the mortgage in bad faith.  As such, Count III is dismissed.

Plaintiffs contend that Defendant ASIC tortiously interfered with their mortgage

contract.  (Compl. ¶¶ 64-73.)  To prevail on a claim for tortious interference with a

contractual relationship, a plaintiff must prove: "(1) a contract; (2) a breach; and (3)

instigation of the breach without justification by the defendant."  *Servo Kinetics, Inc. v.

Tokyo Precision Instruments, Co.*, 475 F.3d 783, 800 (6th Cir. 2007).

Although Defendant ASIC did not file a motion to dismiss, "[a] court may grant a

motion to dismiss even as to nonmoving defendants . . . where the claims against all

defendants are integrally related."  *Hall*, No. 12-11811, 2012 U.S. Dist. LEXIS 85955, at

*14 (citations omitted).  The tortious interference claim against ASIC depends upon the

existence of a breach of contract.  Because the Court rejected the breach of contract

claim, Plaintiffs cannot state a claim for tortious interference. Count IV is dismissed.

**C.    Claimed RESPA Violations**

Plaintiffs allege that PHH violated the RESPA in a two-fold manner: PHH, as loan

servicer, purchased force-placed insurance in violation of 12 U.S.C. § 2605(m)[11] and then

---

[11] Section 2605(m) provides that "[a]ll charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." 12 U.S.C. § 2605(m).

failed to correct the alleged issue in violation of subsection (k)(1).[12]  (Compl. ¶¶ 34-38.)
This claim requires finding that the force-placed insurance policy was neither "bona fide"
nor "reasonable," 12 U.S.C. § 2605(m), and that PHH failed to correct the error in a
timely fashion, 12 U.S.C. § 2605(k)(1).

PHH asserts that these claims must be dismissed because "the cited sections were
not in effect prior to the force-placing of the insurance."  (PHH Br. at 8.) The propriety of
Plaintiffs RESPA claim therefore turns on when the sections relied upon became
effective; if they became effective only after the force-placed insurance was purchased,
the claim must fail as PHH cannot be held liable for acts proscribed by a statute that was
not in effect at the time those acts were taken.

While the Sixth Circuit has not yet addressed the effective dates of these new
RESPA subsections (which were amended by § 1463 of the Dodd-Frank Act), courts in
other circuits have.  In perhaps the most exhaustive analysis of the effective dates of the
provisions, the court in *Williams v. Wells Fargo Bank*, dismissed plaintiff's 12 U.S.C. §
2605(m) claim on the grounds that the provision was not effective prior to the issuance of
the force-placed insurance on plaintiff's property.  *Williams*, No. 11-21233, 2011 U.S.
Dist. LEXIS 105513 (S.D. Fla. Sept. 19, 2011) (unpublished) (Altonaga, J.).  The court
explained that the effective date of the RESPA amendments is governed by § 1400(c) of
the Dodd-Frank Act, which provides that they do not become effective until final

---

[12] Section 2605(k)(1) prohibits loan servicers from "(C) fail[ing] to take timely action to
respond to a borrower's requests to correct errors relating to allocation of payments, final
balances for purposes of paying off the loan, or avoiding foreclosure, or other standard
servicer's duties[.]" 12 U.S.C. § 2605(k)(1)(C).

implementing regulations are passed, or eighteen months after a designated transfer date. *Id.* at *15-16.  That transfer date was set as July 21, 2011.  *Patton v. Ocwen Loan Servicing*, No. 11-cv-445, 2011 U.S. Dist. LEXIS 82789, at *13 n.6 (M.D. Fla. July 28, 2011) (unpublished) (Fawsett, J.) (citing 75 Fed. Reg. 57,252 (Sept. 20, 2010)).

Plaintiffs argue that subsection (m) does not require the implementation of regulations and is therefore governed by § 4 of the Dodd-Frank Act, which provides "[e]xcept as otherwise specifically provided . . . this Act and such amendments shall take effect 1 day after the date of enactment of this Act."  Dodd-Frank Act § 4.  Dodd-Frank became effective on June 21, 2010, and Plaintiffs argue that subsection (m) became effective on June 22, 2010, which was prior to renewal of the force-placed insurance. This argument is unavailing.  As explained above, the RESPA amendments are governed by § 1400(c) of Dodd-Frank, not § 4, as the former provides effective dates for the subsections at issue.

Moreover, Plaintiffs subsection (k)(1) allegation fails to state a claim as there is no indication that the Bureau of Consumer Financial Protection issued final regulations implementing the section before PHH had the force-placed policy put on the property.

For these reasons, Count I of Plaintiffs' Complaint alleging a RESPA violation is dismissed for failure to state a claim upon which relief may be granted.

**E.**  **Defendant ASIC**

Plaintiffs filed this action against PHH, USAA FSB, USAA CIC, Fannie Mae, and ASIC.  All but ASIC filed a motion to dismiss; instead, ASIC filed an answer.  (ECF No. 30.)  Although there appears to be little, if any, Sixth Circuit authority directly on point,

several courts have noted that "[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Hall*, No. 12-11811, 2012 U.S. Dist. LEXIS 85955, at *14 (quoting *Bonny v. Soc. of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) and citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008)). Thus, a court dismissing claims against moving defendants may *sua sponte* dismiss nonmoving defendants provided "it is clear that the same ruling would inevitably apply to each of the defendants."  *Hall*, No. 12-11811, 2012 U.S. Dist. LEXIS 85955, at *14 (citation omitted).

Because the Court finds that the same arguments for dismissing the claims against the moving defendants apply with equal force to Defendant ASIC, the Court dismisses Plaintiffs' claims against Defendant ASIC to the same extent as the moving defendants.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiffs' Second Amended Complaint fails to state a claim for relief as to Counts I, III, IV, V, VI, and VIII.  However, Plaintiffs have stated plausible claims as to Counts II and VII.

Accordingly,

**IT IS ORDERED THAT**, Defendants' Motions to Dismiss are **GRANTED** with respect to Counts I, III, IV, V, VI, and VIII and these Counts are **DISMISSED WITH PREJUDICE** against all Defendants, including ASIC;

**IT IS FURTHER ORDERED THAT**, Defendants' Motions to Dismiss are **DENIED** with respect to Counts II and VII.

Date:  November 15, 2012

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Jerome D. Goldberg, Esq.
Christine E. Ficks, Esq.
Michelle Thurber Czapski, Esq.
Jessica L. Berg, Esq.
Michael T. Ryan, Esq.